(Lucas County Common Pleas.)
GEORGE K. DETWILER v. THE TOLEDO ELECTRIC STREET RAILROAD COMPANY.

---

(1). The fact that an ordinance passed by the city council granting a street railroad franchise, designated the line through the property in question as being a part of the ordinance is not notice which parties are bound by. Owners of property can not be required to take notice of every act of the city council in granting these rights of way.

(2). Where the shield of the constitution is drawn over a man's property, he has a right to protection, although the amount of property involved might be but a hundred dollars, and the damage to the other side might be seventy-five thousand dollars.

(3). Where under the allegations of the petition the defendant appears to defeat the constitutional rights of the plaintiff by taking his property for a right of way, the burden of proof is on the defendant.

(4). Where under an ordinance granting the right of way to a street railroad, grading has been done pointing unmistakingly to the property of plaintiff, and the owner stands by for four months without making any assertion of his rights, or any demand or inquiry upon the railroad company, or commencing proceedings, such delay is held to be a waiver of any rights which he may otherwise have had to interfere with the construction of the railroad.

---

PRATT, J.

In this matter I have examined and re-examined the affidavits filed and my notes of the oral testimony which was taken, and I will, very informal-ly and briefly, state, orally, the conclusions at which I have arrived.

The petition in this case, filed on May 1st, is in the usual form of such a petition, very brief and very simple, and, upon its face, makes a perfect case for injunction.

The answer was filed upon May 3d, and at the starting out admits the title of the plaintiff to the property, and, in so far does not defeat but rather affirms the right of the plaintiff, and it is correctly claimed by plaintiff's counsel in this case, that where constitutional right is involved, no other consideration enters into the matter; where the shield of the constitution is drawn over a man's property, he has a right to protection, although the amount of property involved might be but a hundred dollars, and the damage to the other side might be seventy-five thousand dollars. The answer, however, proceeds to set up certain defenses, and upon these defenses the position, of course, is exactly the same and we regard it exactly the same on these motions as if it were a hearing for the granting of an injunction; we would not allow any person to get any preference by reason of the granting of the injunction without a hearing, as against the granting of it with a hearing.

But the burden of proof, so far as the facts are concerned, is upon the defendant, for the reason that he seeks upon the face, to defeat the constitutional rights of the plaintiff before his property should be taken for a right of way.

The defenses, as stated by counsel in the argument, are three in number:

1. They say that they have acquired this right by contract.

2. By consent.

3. By estoppel.

So far as the right acquired by contract are concerned, I must say, that at no time did the matter impress itself very strongly upon my mind as being one that can be sustained.

So far as the consent is concerned, there is, unquestionably, a difference between the consent here—which is a consent to construct a street railway

through unplatted property of the plaintiff—and consents such as are required by statute to be given to authorize the construction of a street railway through a street, and, without going into that, I would consider this consent as to being sufficient in such a case, in and of itself; but I have admitted the evidence, and have considered the evidence as being competent as given in reference to the original transaction of the purchase of this property of the Detwilers by the Robinsons—and may I say here that I treat the Detwilers as one, and the Robinsons as the defendant, and it is unnecessary to distinguish between what one of them said or did, and the other said or did.

Now, as to the estoppel. There is a manifest difference between the estoppel that is here sought and the estoppel, for instance, that was sought to be made effective in Pennsylvania Co. v. Platt, 47 Ohio St., 262. The definition of estoppel there was given in reference to an attempt to defeat Platt and Scribner from recovering any compensation whatever from the company occupying their land; and the definition given there by the judge was as clear as can be found in any of the books, and was sustained by the supreme court upon full argument, both oral and written, and in that opinion of the supreme court the difference between enjoining a railroad from occupying ground and the recovery of compensation for the occupancy is clearly made, and applies to this case; and when I use the word estoppel here, I use it, as it is used in the books frequently and by the courts, more as a convenience than as being what should be technically termed an estoppel.

The testimony in this case is more conflicting than the court likes to see between these parties. Their version of this transaction differs widely. At the same time, taking the testimony as a whole, considering all the circumstances and reading between the lines as we may say, I think I can get at the substance of the facts—perhaps with one or two exceptions—as being given with but really little conflict.

This purchase of the Wauseon tract, by the Robisons, of the Detwilers, was made under circumstances well understood by both parties—I am giving now my version of the testimony as a whole. It was perfectly understood that it was being purchased for a special and specific purpose; that in order to use it for that purpose it was absolutely necessary that the railroad company should have means of access to it by right of way; and it is perfectly evident that at that time it had not any means of access to the property, and that it was uncertain as to the route which would necessarily be taken to reach it, or as to how that access was to be obtained. It is perfectly evident—considering the testimony in the same line—that the Detwilers (Abram K. being the one that acted principally in this matter) did give assurances and promises to the Robisons that he would assist them or aid them in obtaining this access, and that for the purpose of obtaining this access he would aid them and assist them in getting the right of way through this Rawle-Woodruff track which lay between on all lines (except they went down Summit street) between the city and the point to be reached. It is perfectly evident also, and it is admitted, that Mr. Detwiler —A. K. being the one who acted—did go with the consent to some of the parties interested—and among them Mr. Taylor, who now appears by the testimony upon the witness stand to be the one-half owner in equity in this property, the title being in Mr. Detwiler — to sign a consent, and the terms of that consent have been largely relied upon by both parties, and each have claimed that the matters in this consent weighed in their favor in this contention. To my mind, the claim made in reference to the effect of this consent by defendant's counsel has a greater weight. It is a consent in the most general terms, and supports the contention on the part of defendants, as it seems to me, that Mr. Detwiler's purpose was to do everything he could to aid them in getting through this property, and it is not consistent with the claim of the

plaintiffs—that this right of way was simply to go upon the east line of the property—because, as argued—and I think with a good deal of conclusiveness, on the part of defendant's attorneys—that this was to go through the tract. Now I can give it no other construction but that it was intended to go through the tract and not around it, and to go through it at such point as it might become practicable to go and reach the ultimate end of the property. Now, taking these two together, and without going further into the discussion of the pros and cons, it seems to me that the plaintiff in this case has placed himself in such a position in reference to this matter that it is unconscionable for him now to seek the aid of a court of equity to try to cut off, encumber or interfere with this access to this property, or make it more difficult to reach it. It is not a technical estoppel: I have doubt whether the testimony would reach a technical estoppel to prevent him from recovering compensation for this right of way; but that question I do not have to decide. I do hold that the plaintiff does not come into court in such an attitude at this time as to seek and obtain the aid of a court of equity to prevent the going through this property at this point.

Another objection, it seems to me, is equally strong against the denial of the right of the company to occupy this right of way, and that is the matter of laches on the part of plaintiff in ascertaining his rights or in making his claims in respect to them. I do not place much attention or stress upon the fact that this ordinance, passed November 26, 1894, designated the line through this property as being a part of the ordinance. That is not notice which parties are bound by. It would not be proper, as it seems to me, for any court to require the owners of property to take notice of every act of the city council in granting these rights of way; neither do I give particular force to the fact of the stringing of wires and the planting of posts here upon the twenty-ninth or thirtieth of April—this

case being commenced on the thirtieth. This property is some three miles from the centre of the city. It is not as though it were on a man's lot where he lived, and the owners of property at that distance are not bound to stay upon the property or stand by it for the purpose of finding out whether or not some one is going to spring something with reference to it. But here are facts that are admitted—admitted by Mr. A. K. Detwiler certainly—and that is that in December last—more than four months before this suit was commenced—there had been grading done there at the foot of Wabash street across the canal—filing in, pointing unmistakably to the property of the plaintiff in this case. The coming down Wabash street naturally pointed to the going across of this property at the point where it is proposed to go and where they are seeking now to build it, unmistakably; but I do not find from the testimony at what time they commenced the construction upon Wabash street. I do find that in December there was this grading at the foot of Wabash street, and it pointed directly towards the property of the plaintiff in this case.

There was one matter here which was a serious one to me and has given me some trouble, and that is a direct contradiction of testimony which cannot be reconciled between Mr. A. K. Detwiler and Mr. W. F. Robison, in reference to the conversation about this matter; I refer to the conversation had between them in which Mr. Detwiler made complaint about this work there, and in which it is claimed, upon the one hand, by Mr. Detwiler, that Mr. Robison told him that this road would not hit his land, which conversation is denied by Robison. Now, if there were any evident purpose on the part of the Robisons to mislead the plaintiff as to whether they were going to take this property or not, I should consider it as a most serious matter, because the court would be required and bound to place the seal of condemnation upon any effort to mislead the property owners. But Mr. Robison and Mr. Detwiler

each of them gave their statement in reference to this transaction, and they are utterly and diametrically opposed. They cannot be reconciled. They are neither of them supported by any other testimony. The burden of proof, however, is upon the Detwilers to show that they were misled. I cannot find what the facts were to sustain those two men, one swearing one way and the other swearing the other, and I am compelled, so far as that is concerned, to return a Scotch verdict, not proven. And, it not being proven, I hold that by the delay, from December to May in making any assertion, the making of any direct demand upon the Robisons, or commencing proceedings, or the doing of anything further than this mere talk—as to which there is a difference of testimony—I hold that they have waived any rights which they might otherwise have had. It was said by Mr. Detwiler, in answer to this, that he hadn't staked out the property, and didn't know exactly where the lines were. If this were a matter of a few inches or feet, this kind of an explanation would have great weight. But according to all the testimony, this line of railroad enters this property at Wabash street, fully 350 feet from the corner of the property; that is more than 20 rods, and the Detwilers had no right to shut their eyes to the fact that it was going on where there was such distance that it did go on to their property; they had no right to shut their eyes to the fact that it was going on their property. It was not due diligence on their part to sit down and then afterwards come in, when the construction of the road has commenced, and claim that they didn't know where the line was. They were bound to make some inquiry to find out what the facts were, and therefore I hold that the injunction should not be dissolved, for the two reasons, and I want it distinctly understood that it is for those alone: 1. Want of equity in the plaintiff; 2. Laches on the part of the plaintiff in asserting his claim.

(Plaintiff gave notice of intention to appeal and asked the court to fix the amount of bond; also asked for an order suspending the present order.)